Robert WOLMAN et al., individually and on behalf of all others similarly situated, Plaintiffs,

v.

UNITED STATES OF AMERICA, SELECTIVE SERVICE SYSTEM, Bernard Rostker, Director, Defendants.

Civ. A. No. 80–1746.

United States District Court, District of Columbia.

Nov. 24, 1980.

Charles Sims, Jack D. Novik, New York City, David Landau, Washington, D. C., for plaintiffs.

William Z. Elliott, Theodore C. Hirt, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

GESELL, District Judge.

In implementing the recent program requiring males of certain age to register for a possible draft, the Selective Service has placed a mandatory requirement on registrants that each registrant supply his Social Security number in addition to other information. This class action challenges this practice, claiming that it violates the Privacy Act, Pub.L.No.93–579, § 7, 88 Stat. 1896, 1909 (codified at 5 U.S.C. § 552a (note) (1976)). The law reinstituting registration for the draft contains no provisions which authorize Selective Service to obtain Social Security numbers. Section 7 of the Privacy Act provides that the Federal Government shall not deny any "right, benefit, or privilege" because the individual refuses to disclose his Social Security number. It is the purpose of this section as stated by Senator Percy to block any further expansion of the use of Social Security numbers as a "universal identifier." The section applies to the instant case because a basic right is involved. Citizens have a duty to serve in the Armed Forces and a correlative right to register unimpeded by invasion of their privacy unless statutorily authorized.

In the absence of any case law, the result hinges entirely on the statute, which recognizes only two exceptions. Social Security numbers may be required where specifically directed by statute or where disclosure of Social Security numbers was already required by statute or regulation under a system of records in existence and operating prior to January 1, 1975. Neither of these exceptions is applicable here. Not only is the Selective Service statute silent in authorizing the disclosure of Social Security numbers, but the same system of records now used was not operating on January 1, 1975, within the meaning of the statute.

The draft registration in effect prior to March, 1975, followed the practice of securing Social Security numbers by a form that was generally used. However, there was no law requiring this practice and no regulation consistent with the Administrative Procedure Act that required it in direct terms. Thus, one basic requirement of the "grandfather" provision in Section 7 is not satisfied. Practice is not enough. But even if a contrary determination is made because the regulation referred to the form (an insufficient incorporation by reference), the "grandfather" clause is not available because a new and different system of records is created under the 1980 program. Registration for the draft was entirely terminated by President Ford in March, 1975. The system existing up to 1975 was a local card system, entirely different from the centralized electronic gathering of names nationwide undertaken under the new authorization commencing in 1980. The old system had no continuing value. The purpose of the exception was to prevent disruption of existing systems, as House and Senate reports make clear, but here disruption occurred through other factors.

■ Thus the provisions of the Privacy Act must be applied. The Court declares that there is no legal authority in the Selective Service System to require registrants to furnish their individual Social Security numbers as a condition of valid registration.

The Court is well aware of the impact of this decision. There is an obvious need for verification of identity by Social Security number in this instance. The failure of Congress to provide the necessary authority quite possibly results from a legislative error. It is clear from the congressional hearings preceding reinstitution of registration that Congress was aware that Social Security numbers would be requested in the registration form. If, in fact, there was an inadvertent omission, this can be immediately corrected by the Congress before the next registration in January. The Court, however, has no choice but to enforce the Privacy Act according to its terms. An injunction will issue enjoining the Selective Service from mandatorily requiring Social Security numbers in subsequent registrations and directing that if any individual who has supplied his number so requests in writing, that number shall be stricken from his registration form and not otherwise used.

■ Defendants have suggested that the Court lacks injunctive power in these circumstances but they improperly have placed reliance on Section 3 of the Privacy Act which is not applicable. The traditional equity powers of the Court must be exercised in these circumstances in the absence of any indication from Congress of an intention to limit the Court's inherent power to enforce the law. *Cf. Brookens v. United States*, 627 F.2d 494 (D.C.Cir.1980) (action seeking injunction in Section 7 case determined on merits).

Although the issues have been thoroughly briefed, argued and documented, this brief Memorandum must suffice because of urgent time factors facing the registration program. Further registration will commence January 5, 1981.

### ORDER

Upon consideration of plaintiffs' motion for summary judgment; defendants' motion to dismiss, or, in the alternative, for summary judgment; the oppositions thereto; and the entire record herein; and counsel having been heard, it is hereby

ORDERED AND DECLARED:

(1) Plaintiffs' motion shall be and hereby is granted; defendants' motion is denied;

(2) Defendants' practice of requiring each Selective Service registrant to disclose a Social Security number violates Section 7 of the Privacy Act, 5 U.S.C. § 552a (note) (1976);

(3) The Privacy Act statement on the 1980 Selective Service Form 1 is inaccurate and therefore unlawful insofar as it pertains to the disclosure of Social Security numbers;

(4) Defendants are hereby enjoined from

(a) requiring any Selective Service registrant to disclose his Social Security number;

(b) providing registrants with an inaccurate Privacy Act statement; and

(c) using the 1980 Selective Service Form 1 or any other forms insofar as they contain a space for the mandatory disclosure of a registrant's Social Security number, state that such disclosure is mandatory, or state that the failure to provide such information is an offense punishable by fine or imprisonment; unless defendants take action at the time the form is distributed prominently to notify registrants that the Privacy Act statement is inaccurate to the extent that it states that disclosure of a registrant's Social Security number is mandatory; and

(5) Defendants are ordered to delete and not otherwise use the Social Security number of any registrant who provided such number during registrations conducted in 1980, provided that such registrant writes to defendant requesting that his Social Security number be expunged from such records.