

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

January 27, 1994

Honorable William R. Ratliff
Chair
Senate Education Committee
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-286

Re: Authority of a state licensing agency to require the disclosure of social security numbers (RQ-614)

Dear Senator Ratliff:

You state that you request "clarification of the law relating to the disclosure of social security numbers." By way of background, you explain that the Texas Real Estate Commission (the "commission") has requested the social security number ("SSN") of an individual who is licensed by the commission. The licensee has objected to providing his SSN on the grounds that section 7 of the federal Privacy Act of 1974 prohibits state agencies from denying an individual any "right, benefit, or privilege" for refusing to divulge his or her SSN. *See* 5 U.S.C. § 552a note (Act of Dec. 31, 1974, P.L. 93-579, § 7, 88 Stat. 1909).

Section 7 of the Privacy Act of 1974 provides:

(a)(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.

(2) The provisions of paragraph (1) of this subsection shall not apply with respect to

(A) any disclosure which is required by Federal statute, or

(B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.

(b) Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or

voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it.[1] [Footnote added.]

Section 7 has been interpreted by federal courts to absolutely prohibit any federal, state or local government agency from denying an individual any right, benefit or privilege provided by law for refusing to disclose his or her SSN, except in the limited circumstances delineated in subsection (a)(2). *See, e.g., Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir. 1993) ("This Act makes it unlawful for a governmental agency to deny a right, benefit, or privilege merely because the individual refuses to disclose his SSN"); *Doyle v. Wilson*, 529 F. Supp. 1343, 1348 (D. Del. 1982) ("Section 7 of the Privacy Act broadly prohibits a state from penalizing an individual in any way because of his failure to reveal his social security number upon request, except in certain narrowly defined circumstances"). It has also been interpreted to require such government agencies to provide certain information when requesting an individual to disclose his or her SSN. *See, e.g., Greidinger*, 988 F.2d at 1353; *Doyle*, 529 F. Supp. at 1349 (section 7(b) requires a government agency to disclose whether the disclosure is mandatory or voluntary, by what statute or other authority the SSN is solicited, and what uses will be made of it).

Your inquiry requires us to first consider whether the commission's request for the licensee's SSN falls within any of the exceptions set forth in subsection (a)(2) of section 7. If it is so excepted, then the licensee's refusal to provide his SSN may be a basis for denying a right, benefit or privilege, in this case the renewal of his license. Your inquiry also requires us to consider whether a government agency's request for an SSN which is excepted under subsection (a)(2) must be nevertheless accompanied by the information set forth in subsection (b).

Subsection (a)(2)(A) of section 7 permits a government agency to require disclosure of an SSN only if the disclosure is required by a federal statute, such as selective services laws, *see Wolman v. United States*, 542 F. Supp. 84 (D.D.C. 1982), and the Aid to Families with Dependent Children provisions of the Social Security Act, *see McElrath v. Califano*, 615 F.2d 434 (7th Cir. 1980), for example. Subsection (a)(2)(B) permits a government agency to require disclosure of an SSN only if (i) the agency requires the disclosure as part of its maintenance of a system of records in existence and operating before January 1, 1975 and (ii) the disclosure was required under a statute or regulation adopted prior to that date to verify the identity of an individual. To fall within this exception, it is not sufficient that an agency followed a practice of collecting SSNs prior to January 1, 1975, unless a statute or regulation required the practice in direct terms. *Doyle*, 529 F. Supp. at 1349 ("Administrative practice alone, however,

---

[1] Section 408(a)(8) of title 42 of the United States Code makes it a felony to compel disclosure of an SSN in violation of federal law. 42 U.S.C. § 408(a)(8).

unsupported by any discrete legal grant of authority, is not enough to satisfy the requirements of section 7(a)") (citing *Wolman v. United States*, 501 F. Supp. 310, 311 (D.D.C. 1980)).

The subsection (a)(2)(B) exception has been expanded in effect by a 1976 amendment to the Social Security Act which provides in pertinent part:

> (i) It is the policy of the United States that any State (or political subdivision thereof) may, in the administration of any tax, general public assistance, driver's license, or motor vehicle registration law within its jurisdiction, utilize the social security account numbers issued by the Secretary for the purpose of establishing the identification of individuals affected by such law, and may require any individual [to furnish such social security account number].

> . . . .

> (v) For purposes of clause (i) of this subparagraph, an agency of a State (or political subdivision thereof) charged with the administration of any general public assistance, driver's license, or motor vehicle registration law which did not use the social security number account number for identification under a law or regulation adopted before January 1, 1975, may require an individual to disclose his or her social security number to such agency solely for the purpose of administering the laws referred to in clause (i) above . . . .

42 U.S.C. § 405(c)(2)(C). Thus, under this provision, a government agency may require the disclosure of an SSN in the "administration of any tax, general public assistance, driver's license, or motor vehicle registration law" even if the government agency did not use SSNs for identification purposes under a statute or regulation adopted prior to January 1, 1975. *See Doyle*, 529 F. Supp. at 1349.

Whether the commission may require a licensee to disclose his or her SSN depends upon whether the disclosure falls within one of the exceptions set forth in section 7(a)(2) of the Privacy Act of 1974, or the foregoing provision of the Social Security Act. In a letter to the licensee, the commission indicates that it is required to obtain licensees' SSNs by section 57.491 of the Education Code, a provision adopted in 1989 by the 71st Legislature. *See* Acts 1989, 71st Leg., ch. 985, § 16, at 4063, 4068. Generally, section 57.491 provides that a state agency such as the commission may not renew the license of a licensee who is in default on a student loan guaranteed by the Texas Guaranteed Student Loan Corporation unless the licensee either pays the guaranteed student loan or enters into a repayment agreement on the defaulted loan. To comply with the mandate of section

57.491, the commission has adopted an administrative rule which provides in pertinent part as follows:

> Renewals of licenses issued by the commission are subject to the policies established by the Texas Education Code, § 57.491. Before the commission declines to renew a license due to a default on a loan . . . the commission shall give notice and provide an opportunity for a hearing . . . . The commission shall advise licensees in renewal notices and license application forms that default on a loan guaranteed by the [Texas Guaranteed Student Loan Corporation] may prevent a subsequent renewal of a license.

22 T.A.C. § 535.95(c).

We are unaware of any federal statute that requires state licensing agencies such as the commission to require licensees to disclose their SSNs. The Texas Guaranteed Student Loan Corporation guarantees loans made to eligible borrowers by eligible lenders as provided by the federal guaranteed student loan program under the federal Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq. See* Educ. Code § 57.41. The federal provisions governing guaranteed student loans, *see generally* 20 U.S.C. § 1070a *et seq.* (Subchapter IV-Student Assistance), require borrowers to disclose their SSNs when they apply for loans and when they leave school. *See* 20 U.S.C. §§ 1091(a)(4) (requiring borrower to provide SSN to school or lender), 1091(q) (requiring secretary of education to verify student SSN), 1092(b)(2)(A)(iv)[2] (requiring borrower to notify school or lender of any change in SSN upon leaving school). But we have been unable to identify any federal provision requiring state licensing agencies, such as the commission, to require licensees to disclose their SSNs. Therefore, it is not apparent to us that the commission's request for licensees' SSNs is excepted by section 7(a)(2)(A) of the Privacy Act of 1974.

Furthermore, we have no basis for concluding that the disclosure is excepted by section 7(a)(2)(B) of the Privacy Act of 1974 or the 1976 amendments to the Social Security Act. With respect to the 1976 amendments to the Social Security Act, it is obvious that the commission does not require the disclosure of SSNs as part of the "administration of any tax, general public assistance, driver's license, or motor vehicle registration law." Therefore, the disclosure does not fall within the exception created by the 1976 amendments to the Social Security Act. With respect to section 7(a)(2)(B), neither section 57.491 of the Education Code nor the commission's rule expressly requires the disclosure of a licensee's SSN to renew a license. Moreover, neither provision was

---

[2]As amended by Pub. L. 102-325, Title IV, §§ 486(b), 498(5) (effective with respect to periods of enrollment beginning on or after July 1, 1993).

adopted prior to January 1, 1975 to verify the identity of an individual. Therefore, these provisions do not bring the disclosure within the section 7(a)(2)(B) exception.

Although the commission's stated justification does not satisfy the section 7(a)(2)(B) exception, we cannot rule out the possibility that the commission may be able to demonstrate that it requires the disclosure of SSNs as part of a system of records that was in existence and operating before January 1, 1975, under some other statute or regulation that was adopted prior to that date to verify the identity of an individual. The commission has been in existence since 1949, and has had the authority to issue and renew licenses since that time. *See* Acts 1949, 51st Leg., ch. 149, § 1, at 304. If the commission *required the disclosure of SSNs as part of its system of records in existence and operating before January 1, 1975,* under such a statute or regulation, then the commission is not prohibited under section 7 of the Privacy Act of 1974 from refusing to renew a license on the basis of a licensee's refusal to disclose his or her SSN.[3]

With respect to the second issue, you suggest that the commission and the licensee disagree over the relationship between subsections (a) and (b) of section 7 of the Privacy Act of 1974. Apparently, the commission asserts that subsection (b) is inapplicable when an agency requires the disclosure of an SSN under one of the exceptions listed in subsection (a)(2). The licensee, however, insists that subsection (b) must be read together with the prohibition found in subsection (a).

We agree with the licensee's position. The two subsections have repeatedly been read together to require the disclosure mandated in subsection (b) even when the disclosure falls within one of the exceptions to the prohibition set forth in subsection (a). *See, e.g., Greidinger v. Davis*, 782 F. Supp. 1106 (E.D. Va. 1992), *rev'd and remanded on other grounds*, 988 F.2d 1344 (4th Cir. 1993); *Yeager v. Hackensack Water Co.*, 615 F. Supp. 1087 (D.N.J. 1985); *Doyle*, 529 F. Supp. 1343 *supra*. In *Greidinger*, 782 F. Supp. 1106, for example, the state of Virginia requested individuals to disclose their SSNs as a prerequisite to registering to vote. This disclosure was exempt under section 7(a)(2)(B) of the act, but the state was still required to comply with section 7(b). The court in *Yeager*, 615 F. Supp. 1087, stated "the disclosure of social security numbers

---

[3]For example, the commission contends in a letter recently submitted to this office that it required the disclosure of SSNs "to assist in the determination whether applicants or licensees have been convicted of criminal offenses as shown in criminal history records supplied by the Department of Public Safety" and that its application forms required the disclosure of SSNs for this purpose prior to 1975. It also contends that the commission's use of SSNs for this purpose "constitutes a 'rule', excepting its *required disclosure of [SSNs] from the federal Privacy Act of 1974. Given the state of the law with regard to rulemaking at the time, the Commission's requirements were as binding then as formally adopted requirements are today under present law.*" The determination whether the commission had a regulation requiring the disclosure of SSNs to verify the identification of individuals prior to January 1, 1975, would involve the resolution of factual matters and is therefore not amenable to the opinion process.

cannot be compelled without compliance with section 7(b) of the Privacy Act." 615 F. Supp. at 1091. Similarly, in *Doyle*, 529 F. Supp. 1343, the court noted that even if the Delaware Treasurer's practice of requiring the disclosure of SSNs was excepted by the 1976 amendments to the Social Security Act, it doubted "that in requiring the disclosure of social security numbers as a matter of course, the State Treasurer has complied with the requirements of section 7(b)." *Doyle*, 529 F. Supp. at 1350. The court further explained, "adequate explanations of the information required by section 7(b) is critical to the right afforded by section 7(a) to withhold disclosure of the social security number, except in limited circumstances." *Id.*

We do not decide here whether the letter provided to the licensee by the commission comports with the requirements of section 7(b).[4] We do suggest, however, that the commission might want to review the information it provides to licensees regarding the disclosure of SSNs in light of the foregoing authorities. *See* authorities cited *supra*; *see also Wolman*, 501 F. Supp. at 312 (declaring form requiring the disclosure of an SSN unlawful to the extent that it stated that disclosure was mandatory when no law provided for mandatory disclosure); *Greater Cleveland Welfare Rights Org. v. Bauer*, 462 F. Supp. 1313, 1321 (N.D. Ohio 1978) (concluding that section 7(b) requires meaningful disclosure). In informing licensees regarding the uses which will be made of their SSNs, the commission might also consider whether any such SSN will be subject to public disclosure under the Open Records Act, Government Code chapter 552. *See* Open Records Decision No. 622 (1994).

In sum, we conclude that if the commission required licensees to disclose SSNs as part of its system of records in existence and operating before January 1, 1975, under a statute or regulation adopted prior to that date to verify the identity of an individual, or if a federal statute requires disclosure of SSNs to the commission, the commission is not prohibited from refusing to renew a license on the basis of a licensee's failure to disclose his or her SSN. Even if the commission is authorized to require the disclosure of an individual's SSN, it must "inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it." 5 U.S.C. § 552a note.

---

[4]That letter states in pertinent part: "The disclosure is required under the TEXAS REAL ESTATE COMMISSION Rule and the Social Security Number is specifically required in order for this agency to comply with the requirements of Section 57.491 Texas Education Code. ... Please understand that this is the only reason for our requesting this information." An attachment to that letter states that "[a] social security number is requested in order to identify TREC licensees who have been shown in default."

## S U M M A R Y

Under the federal Privacy Act of 1974, 5 U.S.C. § 552a note (Act of Dec. 31, 1974, P.L. 93-579, § 7, 88 Stat. 1909), the Texas Real Estate Commission may not refuse to renew a license because of the licensee's failure to disclose his or her social security number unless (i) the disclosure is required by a federal statute or (ii) the commission uses the information in a system of records in existence and operating before January 1, 1975, under a statute or regulation adopted prior to that date to verify the identity of an individual. Even if the commission is authorized to require the disclosure of an individual's SSN, it must "inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it." 5 U.S.C. § 552a note.

Very truly yours,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

WILL PRYOR
Special Counsel

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General